**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

CHRISTY WHITAKER,                  )
                                   )
            Plaintiff,             )
                                   )
vs.                                )          No. CIV 07-264-TUC-CKJ
                                   )
PIMA COUNTY, et al.,               )            **ORDER**
                                   )
            Defendant.             )
_____)

Pending before the Court is Defendants' Motion for Summary Judgment [Doc. # 43]. Plaintiff has filed a response and Defendants have filed a reply.  Oral argument was presented to the Court on November 10, 2008.

*Factual and Procedural Background*[1]

On December 27, 2006, Plaintiff Christy Whitaker's ("Plaintiff") son, Eric Whitaker ("Whitaker"), became a suspect in connection with the alleged theft of a vehicle in Tucson, Arizona.  Officers received a Lojack[2] signal from the allegedly stolen vehicle.

_____

[1]Unless otherwise stated, the facts are taken from Plaintiff's statement of facts.

[2]According to Defendants' Statement of Facts, when a vehicle equipped with a Lojack system is reported as stolen, the system emits a signal that police can receive with their Lojack tracking system.

Defendants assert that Defendant Pima County Deputy Sheriffs Paul Petropoulos ("Petropoulos") and Erick Maldonado ("Maldonado") located the source of the Lojack signal, a large Dodge pickup trick, in the dirt parking lot behind some apartments. Defendants assert that an individual later identified as Whitaker was in the pickup. Defendants assert that Maldonado and Whitaker made visual contact with each other; Maldonado thought Whitaker looked surprised and scared, as if he had just been caught.

When the deputies entered the lot, the pickup accelerated out of the far east corner of the lot traveling westbound.  Defendants assert that Petropoulos parked his vehicle at the mouth of the alleyway going into the lot and proceeded into the lot on foot; Maldonado slowly drove his marked SUV into the lot.  The pickup made a u-turn around the area where Petropoulos was standing and then made another u-turn.[3]  Defendants assert that the pickup truck accelerated at a high rate of speed, the tires spinning in the dirt and gravel, as the subject drove directly in front of Maldonado's vehicle, narrowly missing it.

Defendants assert that Petropoulos yelled at Whitaker to stop the vehicle, but Whitaker did not comply.  Defendants further assert that Whitaker drove at a high rate of speed, made a complete circle, then rammed the rear end of Maldonado's vehicle.  Defendants assert the impact knocked Maldonado's vehicle forward about 25 to 30 feet.

Defendants assert that it appeared to Petropoulos that Whitaker was acting intentionally and that Whitaker was attempting to injure Maldonado or disable his vehicle. Plaintiff, in her supplemental Statement of Facts, disputes that Whitaker intentionally hit Maldonado's vehicle.[4]  Plaintiff asserts that Whitaker's vehicle hit Maldonando's vehicle after Whitaker's pickup truck hit a small tree and bounced off of that tree.  Plaintiff relies on

---

[3]Defendants object to Plaintiff's reliance of support for this fact being hearsay statements in an unauthenticated police report. *See* Court's discussion regarding inadmissible evidence, *infra*, at pp. 14-17.

[4]Whitaker supplemented her Statement of Facts pursuant to the Court's Order regarding compliance with L.R.Civ. 56.1.

1   police reports to support this assertion.[5]

2         Defendants assert that it appeared to Petropoulos that the pickup truck was coming

3   back around to run him down or to strike Maldonado's vehicle again.  Defendants assert

4   Petropoulos was out in the open without any concealment and he was unaware of whether

5   Maldonado was injured or would be able to protect himself.

6         The pickup exited the lot, drove to the west, and collided with a fence.  The deputies,

7   with guns drawn, approached the pickup that was stuck on the fence and unable to move.[6]

8   After the collision, Petropoulos observed the tires on the pickup truck spinning.  Petropoulos

9   fired four rounds from his pistol at the vehicle after Whitaker's collision with Maldonado's

10  vehicle.  Petropoulos and Maldonado yelled at Whitaker to show his hands.[7]  Petropoulos

11  saw one of Whitaker's arms come out of the driver side window and leave a bloody hand

12  print on the roof of the vehicle.  Petropoulos made no attempt to approach the vehicle when

13  he saw the raised arm and made no effort to communicate this information to Maldonado.

14  At no point did Petropoulos see or have any indication that Whitaker had a weapon.

15  Defendants assert that this does not lead to a conclusion that Whitaker was not dangerous

16  because a vehicle can be a deadly weapon.  Maldonado discharged his weapon five to six

17  times.  When Maldonado fired his weapon at the pickup truck, the pickup truck was not

18  moving despite the fact that the wheels of the pickup truck were spinning.  Maldonado fired

19  his weapon after the pickup truck was in the adjacent lot.

20        Defendants assert that Maldonado could hear Petropoulos yelling at Whitaker to show

21  _____

22        [5]Defendants object to Plaintiff's reliance of support for this fact being hearsay

23  statements in an unauthenticated police report.  *See* Court's discussion regarding inadmissible
    evidence, *infra*, at pp. 14-17.

24        [6]Defendants object to Plaintiff's reliance of support for this fact being hearsay

25  statements in an unauthenticated police report.  *See* Court's discussion regarding inadmissible
    evidence, *infra*, at pp. 14-17.

26
27        [7]Defendants object to Plaintiff's assertion that Maldonado was yelling at Whitaker.
    There is no support in the record for the assertion.

28                                              - 3 -

1    his hands as Maldonado walked over to the adjacent lot with his pistol drawn; he observed

2    the truck stopped, with its engine on.  Defendants assert that, as Maldonado came into the

3    adjacent lot, he saw the tires of the pickup truck spinning, heard the engine being revved

4    loudly; it appeared to Maldonado that Whitaker was attempting to back out, but the pickup

5    truck was not moving – Maldonado did  not know to what degree the pickup truck was

6    immobilized.  Defendants assert that it appeared to Maldonado that if the pickup truck gained

7    some traction, it could run over Petropoulos and other officers in the area.[8]  Defendants assert

8    that Maldonado knew that, for Whitaker to escape, he would encounter law enforcement

9    officers between him and the exit points of the lot.  Defendants further assert that, based on

10    Whitaker's actions of being in possession of a stolen vehicle, attempting to flee, his reckless

11    driving, his ramming the rear of Maldonado's vehicle, his refusal to surrender, his ongoing

12    attempt to flee by revving his engine and spinning his tires in reverse to free the pickup truck,

13    and Maldonado's uncertainty as to the degree to which the pickup truck was immobilized and

14    his perception that the driver posed a threat to civilians if Whitaker made it to the roadway,

15    along with the facts the pickup truck was not penned in and the close proximity to other

16    officers, Maldonado made a decision to use deadly force.  Defendants assert that, right after

17    Petropoulos was yelling commands at Whitaker to get out of the pickup truck, to which

18    Whitaker did not comply, and as the wheels of the pickup truck continued to spin in reverse,

19    Maldonado, standing on the driver's side of the truck, fired his pistol at Whitaker.

20         Law enforcement vehicles were parked behind the pickup truck.  Interviews with at

21    least two officers indicate that, with the law enforcement vehicles in the back of the pickup

22

23        [8]Maldonado testified at deposition that a Tucson Police Department officer was standing near Petropoulos and that a Pima County Sheriff's Department sergeant was

24    standing about 25 to 30 feet behind the pickup truck.  Plaintiff does assert that Petropoulos was behind a police vehicle.  However, the support for that assertion is based on a hand-

25    drawn diagram and an aerial photograph for which no foundation has been presented and the misconstruing of Petropoulos' deposition testimony as to the photograph.  Petropoulos

26    testified as to his location, but testified that the photograph was not accurate as to the location

27    of the police vehicles at the time of the shooting.

28    

truck and a tree and trash dumpster in front of the pickup trick, the pickup truck was trapped with no route of escape.[9]

After the shooting, Whitaker was removed from the pickup truck.  Whitaker exhibited no signs of life.

Officer reports conflict as to whether Whitaker was attempting to back the pickup truck up as at least one officer indicated that the pickup truck was in first gear, and not reverse, following the subsequent shooting.[10]

Defendants assert that expert witness of police practices Ken Katsaris ("Katsaris") has stated that it is his opinion, based on his experience and the materials he reviewed, that the use of deadly force by Petropoulos and Maldonado was reasonable and justified.[11]

On June 6, 2007, Plaintiff filed a Civil Rights Complaint against Pima County, Pima County Sheriff's Department, Maldonado, and Petropoulos.  The complaint alleges that Defendants deprived Plaintiff of her civil rights, privileges and immunities as guaranteed under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment of the United States

---

[9]Defendants object to Plaintiff's reliance of support for this fact being unauthenticated police reports, unsworn interviews, and/or aerial photographs for which foundation has not been provided.  *See* Court's discussion regarding inadmissible evidence, *infra*, at pp. 14-17.

[10]Defendants object to Plaintiff's reliance of support for this fact being an unauthenticated police report.  *See* Court's discussion regarding inadmissible evidence, *infra*, at pp. 14-17.

[11]Plaintiff argues that the opinions of Defendants' expert are not relevant and such opinions are for the Court to make.  However, Plaintiff has not presented any basis for the Court to conclude that the expert opinion is not admissible.  *See e.g., Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1318 (9th Cir. 1985) ("Expert opinion is admissible and may defeat summary judgment if it appears the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit, even though the underlying factual details and reasoning upon which the opinion is based are not."); *Slaughter v. Souther Talc Co.*, 919 F.2d 304 (5th Cir. 1990) (expert's bare conclusion derived from erroneous data should not be considered).; *see also McDevitt v. Guenther*, 522 F.Supp.2d 1272 (D.Haw. 2007) (court rejected argument that bias and credibility of expert is appropriate for consideration at summary judgment stage).  Katsaris' affidavit sets forth his experience and training and sets forth the factual basis for his opinion.  *See* Defendants' Statement of Facts, Ex. 3.

Constitution. Plaintiff asserted that Maldonado and Petropoulos violated her civil rights under color of state law and claims damages under 42 U.S.C. § 1983. Plaintiff also claims damages under 42 U.S.C. § 1983 against Pima County and the Pima County Sheriff's Department for developing, implementing, and maintaining policies or customs which exhibit deliberate indifference to the constitutional rights of persons who are arrested in Pima County and for allowing the use of excessive and unnecessary force against members of the public. Plaintiff also alleged claims against Defendants under the Constitution and laws of the State of Arizona including wrongful death, negligent infliction of emotional distress, and intentional infliction of emotional distress.[12]

On June 16, 2008, Defendants filed a Motion for Summary Judgment. Plaintiff has filed a response and Defendants have filed a reply and a reply to Plaintiff's Statements of Facts.

*Summary Judgment Legal Standard*

Summary judgment may be granted if the movant shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. The disputed facts must be material. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Therefore, the nonmoving party must demonstrate a dispute "over facts that might affect the outcome of the suit under the governing law" to preclude entry of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The dispute over material facts must also be genuine. *Id.* A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the

_____

[12]The Court previously granted summary judgment in favor of Defendants as to the claims of negligent and intentional infliction of emotional distress.

nonmoving party." *Id.*  A party opposing a properly supported summary judgment motion must set forth specific facts demonstrating a genuine issue for trial.  *Id.*  Mere allegation and speculation are not sufficient to create a factual dispute for purposes of summary judgment. *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995) (per curiam); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts'").  "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511.  However, the evidence of the nonmoving party is to be believed and all justifiable inferences are to be drawn in his favor.[13]  *Id.* at 255.  However, the relevant facts are to be determined and inferences drawn in favor of nonmoving party "*to the extent supportable by the record*[.]"  *Scott v. Harris*, 550 U.S. 372 , 127 S.C.t 1769, 1776 n. 8, 167 L.Ed.2d 686 (2007).

The Court is not to make credibility determinations with respect to the evidence offered and is required to draw all inferences in a light most favorable to the non-moving party.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987), citing *Matsushita Elec.*, 475 U.S. at 587 (1986).  Summary judgment is not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts[.]" *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324 (9th Cir. 1980).

Defendants assert that Plaintiff has not provided admissible evidence in support of her Statements of Facts.  Specifically, Defendants assert that no admissible evidence has been presented to establish that Whitaker's pickup struck a tree and then bounced into Maldonado's vehicle, that Whitaker's pickup was permanently immobile and/or blocked, or

---

[13]The Court resolves all factual disputes in Plaintiff's favor for purposes of this motion.  *See Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1992).

that Whitaker's pickup was in first gear after the incident.  Declarations and other evidence that would not be admissible may be stricken.  *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991).  The Court will not consider the statements that are not supported by admissible evidence.  However, while Plaintiff's assertion that Whitaker's vehicle hit a tree and then bounced off the tree to hit Maldonado's vehicle is not admissible, Plaintiff has also not presented any evidence that Petropoulos or Maldonado saw, or were in a position to see, if Whitaker's vehicle had first hit a tree.

Defendants also assert that Plaintiff has not adequately disputed Defendants' Statement of Facts.  While Plaintiffs' Statement of Facts does not comply with L.R.Civ. 56.1, the United States Supreme Court has ruled that it is only when a party fails to controvert a statement of facts that the facts are deemed to be valid.  *Beard v. Banks*, 548 U.S. 521, 126 S.Ct. 2572 (2006).  The Court will consider controverting admissible evidence despite Plaintiff's failure to comply with L.R.Civ. 56.1

*Qualified Immunity*

Government officials are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Liston v. County of Riverside*, 120 F.3d 965, 975 (9th Cir. 1997), citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The defense of qualified immunity allows for errors in judgment and protects "all but the plainly incompetent or those who knowingly violate the law . . . [I]f officers of reasonable competence could disagree on the issue [whether or not a specific action was constitutional], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).  The Court must determine "whether, in light of clearly established principles governing the conduct in question, the officer objectively could have believed that his conduct was lawful." *Watkins v. City of Oakland*, 145 F.3d 1087, 1092 (9th Cir. 1998).

When qualified immunity is asserted at the summary judgment stage, the court may

consider "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001);[14] *see also Billington v. Smith*, 292 F.3d 1177, 1183 (9th Cir. 2002). If no constitutional right was violated, then there is no need for any further inquiries into qualified immunity. *See e.g., Scott*, 127 S.Ct. at 1774. If the evidence supports a finding that a constitutional rights has been violated, the court then "ask[s] whether the right was clearly established" such that "it would be clear to a reasonable officer that [his] conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201-202.

The Fourth Amendment prohibition on the use of excessive force is a clearly established right. *Hansen v. Black*, 885 F.2d 642 (9th Cir. 1989). Excessive force claims are analyzed under the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 1867-68, 104 L.Ed.2d 443 (1989). Under the Fourth Amendment, police may use only such force as is objectively reasonable under the circumstances. *Id.* at 397. "The reasonableness inquiry is objective, without regard to the officer's good or bad motivations or intentions." *Billington*, 292 F.3d at 1185. Reasonable force is that force which is necessary to secure the safety of the officers during a search or arrest. *Graham*, 490 U.S. at 395. Police officers are not required to pursue the least intrusive degree of force when force is reasonably necessary. *Cady v. Dombrowski*, 413 U.S. 433, 447, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

Reasonableness must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and allow "for the fact that [peace] officers are often forced to make split-second judgments – in circumstances that are tense,

---

[14]The United States Supreme Court recently determined that the sequence set forth in *Saucier* is not mandatory and that district courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, — S.Ct. —, 2009 WL 128768 *9 (1/21/09).

uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396; *see also Chew v. Gates*, 27 F.3d 1432, 1440-1441 (9th Cir. 1994). Among the factors to consider are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. Moreover, the analysis "requires balancing the 'nature and quality of the intrusion' on a person's liberty with the 'countervailing governmental interests at stake' to determine whether the use of force was objectively reasonable under the circumstances." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003). It is also appropriate for the Court to consider "the number of lives at risk, [as well as] their relative culpability. *Scott*, 127 S.Ct. at 1778.

Any genuine issues of material fact concerning the underlying facts of what the officer knew or what the officer did are questions of fact for the jury. *Acosta v. City and County of San Francisco*, 83 F.3d 1143, 1149 (9th Cir. 1996), citing *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995). However, where the essential facts are undisputed, the reasonableness of the officer's actions is properly determined by the court. *Sinaloa Lake Owners Ass'n*, 70 F.3d at 1099; *see also Henrich*, 39 F.3d at 915. ("Even though reasonableness is traditionally a question of fact for the jury, defendant can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.").

The use of deadly force against a fleeing unarmed, non-dangerous suspect is constitutionally unreasonable. *Tennessee v. Garner*, 471 U.S. 1, 9-10, 105 S.Ct. 1694, 1700, 85 L.Ed.2d 1 (1985). However, if an officer has probable cause to believe the suspect poses a threat of serious physical harm either to the officers or other, it is not constitutionally unreasonable to prevent escape by using deadly force. *Id*., 471 U.S. at 10. Moreover, officers are not required to use the least intrusive degree of force possible. *Forrester v. City of San Diego*, 25 F.3d 804, 807-08 (9th Cir. 1994). Rather, the inquiry is whether the force

- 10 -

1  that was used was reasonable.  *Id.*

2      Plaintiff asserts that this case is similar to *Sigley v. City of Parma Heights*, 437 F.3d

3  527 (6th Cir. 2006), wherein a suspect was attempting to evade capture by law enforcement.

4  The main issue in *Sigley* was whether the suspect posed an immediate threat to an officer and

5  the safety of others.  However, unlike in *Sigley* where the suspect had, on more than one

6  occasion, attempted to swerve around officers, Whitaker had accelerated in the lot and then

7  struck Maldonado's vehicle.  Whether Whitaker intended to strike Maldonado's vehicle or

8  not, he struck the vehicle with enough force to move the vehicle 25 to 30 feet.  Moreover,

9  expert testimony in *Sigley* was offered to dispute the officer's timeline.   Additionally,

10  conflicting views of the facts in *Sigley* demonstrated that there were unresolved factual

11  issues.  In this case, Plaintiff has not presented admissible evidence to dispute any material

12  issues of fact.

13

14  *Analysis of Qualified Immunity as to Petropoulos*

15      Plaintiff does not dispute that, when Whitaker was accelerating in the lot, Petropoulos

16  yelled at Whitaker to stop the vehicle.  Plaintiff also does not dispute that Whitaker did not

17  comply.  Plaintiff does not dispute that Petropoulos did not observe Whitaker's pickup truck

18  bounce off of a tree and hit Maldonado's vehicle; nor does Plaintiff present any evidence that

19  Petropoulos was in a position to have seen Whitaker's vehicle hit a tree.  Plaintiff does assert

20  that Whitaker's conduct was not intentional, but Plaintiff fails to provide any evidence that

21  disputes Petropoulos' belief that Whitaker's conduct was intentional, that Petropoulos

22  perceived that Whitaker's vehicle was coming around to either run him over or strike

23  Maldonado's vehicle.  Further, Plaintiff does not dispute that Petropoulos was on foot, in the

24  open, and did not know if Maldonado was injured or able to flee or protect himself.  Plaintiff

25  does argue, however, that because Petropoulos was out in the open and Whitaker drove past

26  him without hitting him, clearly Whitaker had not intention of harming Petropoulos. Plaintiff

27  further argues that, instead of getting out of his allegedly vulnerable position, Petropoulos

28

1    fired multiple shots at Whitaker.    The undisputed evidence establishes that Petropoulos

2    knew Whitaker was in possession of a stolen vehicle, Petropoulos observed the stolen vehicle

3    strike Maldonado's vehicle,  Petropoulos perceived Whitaker's conduct to be intentional,

4    Petropoulos knew Whitaker had failed to surrender and/or stop the vehicle despite orders to

5    do so, Petropoulos observed Whitaker continuing to attempt to flee, and Whitaker was

6    actively resisting arrest.  Indeed, Plaintiff acknowledges that Whitaker was attempting to

7    leave the scene. *See* Response, p. 7. Further, Whitaker placed himself and others in danger

8    by unlawfully engaging in reckless, high-accelerating speeds in the parking lot. *See e.g.,*

9    *Cole v. Bone*, 993 F.2d 1328, 1333 (8th Cir. 1993) (officer "had probable cause to believe

10   that the truck posed an imminent threat of serious physical harm to innocent motorists as well

11   as to the officers themselves"); *Smith v. Freeland*, 954 F.2d 343, 347 (6th Cir. 1992)

12   (officer's decision to stop the vehicle, which can be a deadly weapon, from injuring others

13   was reasonable).   Plaintiff's argument that Whitaker's failure to hit Petropoulos indicates

14   that Whitaker was simply attempting to flee does not take into consideration that Whitaker's

15   vehicle struck Maldonadlo's vehicle. Additionally, expert Katsaris opines that the deliberate

16   circling of the pickup and its coming back to hit Maldonado's vehicle is universally

17   considered the use of deadly force because of the weight of the vehicle and the potential for

18   death or serious physical injury.  The Court considers this evidence in light of the fact that

19   Plaintiff has not presented any evidence to dispute Petropoulos' perception that Whitaker had

20   acted intentionally.

21        Petropoulos' use of deadly force was reasonable to stop a dangerous fleeing felon –

22   Petropoulos had seen what appeared to him to be an intentional assault using the pickup truck

23   as a weapon. *See Garner* (deadly force may be used if necessary to prevent escape if there

24   is probable cause to believe that the suspect committed a crime involving the infliction or

25   threatened infliction of serious physical harm). Further, Petropoulos' use of deadly force was

26   reasonable because Petropoulos had probable cause to believe that Whitaker posed a threat

27   of serious physical injury to himself and Maldonado.  *Id*.  (it is not unconstitutionally

28                                              - 12 -

1    unreasonable to prevent escape by using deadly force where officer has probable cause to

2    believe that suspect poses a threat of serious physical harm to officers or others).  The Court

3    finds Petropoulos' use of deadly force was reasonable and, therefore, did not constitute an

4    unconstitutional use of excessive force.  Petropoulos is entitled to qualified immunity.

5

6    *Analysis of Qualified Immunity as to Maldonado*

7         Plaintiff does not dispute that Whitaker accelerated through the lot and hit

8    Maldonado's vehicle.  Plaintiff does not dispute that Maldonado apparently did not observe

9    Whitaker's pickup bounce off of a tree and hit Maldonado's vehicle; nor does Plaintiff

10   present any evidence that Maldonado was in a position that he would have been able to see

11   if Whitaker's vehicle hit a tree.  Plaintiff does not dispute that Maldonado saw the pickup

12   truck stopped with the engine on.  Further, Plaintiff does not dispute that the engine was

13   being revved and the tires were spinning.[15]  Plaintiff does not dispute that Whitaker did not

14   get out of the pickup truck.  The parties agree that the pickup was stuck on something.  No

15   evidence has been presented to establish whether the pickup was actually stuck. Indeed, such

16   evidence is not relevant to a determination of whether Maldonado had probable cause to

17   believe Whitaker posed a threat of serious physical harm either to the officers or others.

18   *Garner*, 471 U.S. at 10.  Plaintiff does not dispute that Maldonado could not tell if the pickup

19   was permanently immobilized.  Further, Plaintiff does not present any admissible evidence

20   to dispute that Maldonado perceived that Petropoulos and other officers could be run over

21   if the pickup gained traction.[16]  Additionally, based on the reckless manner in which

22   Whitaker had been driving, Maldonado felt that Whitaker posed a high public safety risk if

23   he were to get onto a roadway.  Assuming, *arguendo*, that Petropoulos and the officer

24

25        [15]Plaintiff does present inadmissible evidence to show that the vehicle may have subsequently been seen to have been in first gear.

26

27        [16]Although Plaintiff asserts that the pickup was clearly stuck, Plaintiff has not provided any admissible evidence to support this statement.

28

1   standing with him should have moved out of the way, Maldonado still perceived that other

2   officers in the lot and the public were at risk if Whitaker should get away.

3       Maldonado's use of deadly force was reasonable to stop a dangerous fleeing suspect

4   who had just assaulted him with a vehicle.  Moreover, Maldonado's use of deadly force was

5   reasonable because Maldonado had probable cause to believe that Whitaker posed a threat

6   of serious physical injury to other officers and the public.  *See Garner*  (it is not

7   unconstitutionally unreasonable to prevent escape by using deadly force where officer has

8   probable cause to believe that suspect poses a threat of serious physical harm to officers or

9   others); *see also Cole*, 993 F.2d at 1333; *Smith*, 954 F.2d at 347.  Whitaker was in possession

10  of a stolen vehicle, had been driving recklessly, had struck Maldonado's vehicle with his

11  pickup truck, continued to rev his engine, and Maldonado was unable to determine if the

12  pickup was permanently immobile; Maldonado's perception was that if the truck gained

13  traction and broke free, Whitaker posed a threat of serious physical injury to officers and

14  civilians.[17]  Moreover, Whitaker placed himself in danger by his ongoing unlawful conduct

15  as opposed to the conduct of the officers and public who might have been harmed by

16  Whitaker's conduct.  Additionally, expert Katsaris opines that Maldonado's use of deadly

17  force was objectively reasonable to stop a violent, fleeing offender.  The Court finds

18  Maldonado's use of deadly force was reasonable, *see Forrester*, 25 F.3d at 807-08, and,

19  therefore, did not constitute an unconstitutional use of excessive force.  Maldonado is entitled

20  to qualified immunity.

21

22  *Inadmissible Evidence*

23      Although the Court has determined that consideration of inadmissible evidence is not

24  appropriate, the Court will briefly discuss the inadmissible evidence and how it effects a

25  _____

26      [17]Plaintiff does assert that Petropoulos was behind a police vehicle.  However, the
    support for that assertion is based on an aerial photograph for which no foundation has been
27  presented and the misconstruing of Petropoulos' deposition testimony as to the photograph.

28                                          - 14 -

1    qualified immunity analysis.[18]  Initially, the Court acknowledges that Plaintiff argued that

2    police reports are admissible as an exception to the hearsay rule.  However, Plaintiff has

3    made no effort to authenticate the reports.  Further, Plaintiff has not presented any basis for

4    the admissibility of statements attributed to persons other than the officers writing the

5    reports.  *See United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983) ("It is well

6    established that entries in a police report which result from the officer's own observations

7    and knowledge may be admitted but that statements made by third persons under no business

8    duty to report may not."); *Colvin v. United States*, 479 F.2d 998, 1003 (9th Cir. 1973)

9    ("Entries in a police report based on an officer's observation and knowledge may be

10   admitted, but statements attributed to other persons are clearly hearsay, and inadmissible

11   under the common law exception to the hearsay rule or under [28 U.S.C. § 1732].").

12        As to Plaintiff's claim that the vehicle may have been in first gear following the

13   incident, Plaintiff has not provided any foundational basis for this evidence.  Rather, Plaintiff

14   provides no information that such observations were made immediately after the incident

15   (i.e., before anyone could have moved the gear shift).  Further, spinning tires, whether in

16   forward or reverse, could indicate to officers that Whitaker was attempting to free his

17   vehicle.  Indeed, someone attempting to free a vehicle may alternate between forward and

18   reverse momentum.  The Court finds that, even if this evidence was admissible, it would not

19   affect the Court's determination that Maldonado's conduct does not constitute a

20   constitutional violation.

21        Plaintiff also asserts that the pickup truck was clearly stuck.  Plaintiff relies on hearsay

22   contained within police reports.  However, the exhibits presented to the Court do not

23   establish that the pickup truck was "clearly" stuck.  Rather, one report indicates that the

24   pickup truck was caught upon the fence line and the other report indicates the pickup was

25

26

27        [18]The Court recognizes that, if this matter were to proceed to trial, Plaintiff may be able to present admissible evidence.

28                                          - 15 -

1  stuck on the fence.  Neither report addresses whether the pickup truck had been immobilized

2  or whether if it gained traction it would be able to free itself.  Therefore, the Court finds that,

3  even if this evidence was admissible, it would not affect the Court's determination that

4  Maldonado's conduct does not constitute a constitutional violation.

5         As to Plaintiff's assertion that Whitaker struck a tree and then bounced into the back

6  of Maldonado's vehicle, Plaintiff again relies on hearsay contained within police reports.

7  Plaintiff does not dispute that neither Petropoulos nor Maldonado observed the pickup

8  striking the tree first.  Moreover, Plaintiff has not presented any evidence that one or both of

9  the deputies were in a position that they necessarily would have had to see the pickup strike

10  the tree.  Although Plaintiff argues that it would have been impossible for Whitaker's pickup

11  to hit Maldonado's vehicle in a manner that would have reasonably posed a threat of harm

12  to either Maldonado or Petropoulos, Plaintiff has not presented any evidence to dispute

13  Defendants' assertion that the impact knocked Maldonado's vehicle forward about 25 to 30

14  feet.  Whether Whitaker's vehicle struck a tree first or not does not diminish the fact that the

15  impact between the vehicles was significant.  In determining if there was probable cause for

16  the deputies to conclude that Whitaker had committed an assault on Maldonado, the

17  significant impact of the collision only supports such a determination.  The Court finds that,

18  even if this evidence was admissible, it would not affect the Court's determination that

19  Petropoulos' and Maldonado's conduct did not constitute a constitutional violation.

20         Plaintiff also asserts that the pickup truck was blocked in by police vehicles and,

21  therefore, could not have escaped.  In support of this assertion, Plaintiff relies on a diagram

22  and an aerial photograph without any foundation to establish that the diagram or the photo

23  fairly and accurately shows the location of the vehicles at the time of the incident.  Indeed,

24  Petropoulos and Maldonado testified at their depositions that the aerial photograph had been

25  taken after the shooting and did not reflect the number or position of vehicles that were

26

27

28                                        - 16 -

present at the time of the shooting.[19]  Further, Plaintiff has not presented any admissible evidence to dispute Maldonado's deposition testimony that the vehicles were 10 or 15 feet away from the pickup truck at the time of the shooting and that, in his training and experience, the pickup truck was not pinned in.  Indeed, Petropoulos' deposition testimony supports a conclusion that Maldonado believed the pickup truck was not blocked in because, after the shooting, Maldonado yelled out to block the pickup in.  The Court finds that there is no admissible evidence to support Plaintiff's assertions and, therefore, this alleged evidence does not alter the Court's determination that Maldonado's conduct did not constitute a constitutional violation.

Although the Court resolves all inferences in Plaintiff's favor, the "'mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'"  *Scott*, 127 S.Ct. at 1776, *quoting Anderson*, 477 U.S. at 247-48.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott*, 127 S.Ct. at 1776.  The Court finds consideration of the inadmissible evidence does not affect the Court's determination that Petropoulos and Maldonado are entitled to qualified immunity.

*Conduct Not Clearly Unlawful to Reasonable Officer*

Because there is not a material issue of fact that a constitutional right was violated, this Court need not make any further inquiries into qualified immunity.  *See e.g., Scott*, 127 S.Ct. at 1774.  However, the Court will briefly discuss whether any constitutional right was clearly established such that "it would be clear to a reasonable officer that [his] conduct was

---

[19]Tucson Police Department Officer Ed Pena's declaration supports this in that he stated he moved his vehicle up to the rear bumper of the truck after the shooting.

1  unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201-202.

2        To meet this standard, a law must be clearly established in a more particularized, and

3  hence more relevant sense, such that any reasonable officer would understand that what he

4  is doing violates the constitutional right. *Saucier*, 533 U.S. at 202. The Court must

5  determine whether it would be clear to a reasonable officer that his conduct was unlawful in

6  the situation he confronted. *Id.* Plaintiff has not pointed to any clearly established law that

7  would have provided Petropoulos or Maldonado fair warning that the shooting of Whitaker

8  violated a constitutional right. Although Plaintiff cites to *Graham* for the proposition that

9  force is only justified when there is a need for force, her conclusory statement relies on her

10  "significant body of facts" for which she has not provided admissible evidence to support.

11  A reasonable officer, faced with the circumstances of an individual that had used a stolen

12  vehicle as a weapon to assault one of the officers, where that individual was perceived to be

13  continuing to attempt to flee and who posed a threat of serious physical injury to officer and

14  the public, would not have been aware of any established law that would have provided fair

15  warning that shooting the individual would violate a constitutional right. Indeed, in *Brosseu*

16  *v. Haugen*, 543 U.S. 194, 200-01, 125 S.Ct. 596 (2004), the Supreme Court found that in

17  situations where persons in the immediate area are at risk from the flight of a suspect in a

18  fleeing vehicle and that suspect is shot, the result "depends very much on the facts of each

19  case." In *Brosseau*, the Court concluded that the officer's conduct fell within the ''hazy

20  border between excessive and acceptable force'" and that the established law did not clearly

21  establish that the officer's conduct violated the Fourth Amendment. *Id.*, at 201, *quoting*

22  *Saucier*, 533 U.S. at 206. Because officers of reasonable competence could disagree on

23  whether the conduct of Petropoulos and Maldonado was constitutional, a finding of qualified

24  immunity for Petropoulos and Maldonado is appropriate. *Malley*, 475 U.S. at 341; *see also*

25  *Pace v. Capobianco*, 283 F.3d 1275, 1283 (11th Cir. 2002) (case law does not provide clear

26  answers to factual situation where officer shoots a fleeing suspect in a vehicle); *Cole*, 993

27  F.2d at 1333 (officer "had probable cause to believe that the truck posed an imminent threat

28

1  of serious physical harm to innocent motorists as well as to the officers themselves"); *Smith*,

2  954 F.2d at 347 (officer's decision to stop the vehicle, which can be a deadly weapon, from

3  injuring others was reasonable).

4

5  *Liability of Pima County*

6       In order to impose liability of Pima County, Plaintiff must show that the county

7  "implement[ed] a policy so deficient that the policy 'itself is a repudiation of constitutional

8  rights' and is 'the moving force of the constitutional violation.'" *Redman v. County of San*

9  *Diego*, 942 F.2d 1435, 1446 (9th Cir.1991), cert. denied, 112 S.Ct. 972 (1992) (*quotations*

10  *omitted*); *see also Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989) (a supervisor may be

11  liable under § 1983 if he "knew of the violations and failed to act to prevent them.").

12       However, Plaintiff has not provided any evidence that any policy expressly

13  sanctioned, enacted, or authorized by Pima County that led to an alleged injury. *Pembaur*

14  *v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Ulrich v.*

15  *City and County of San Francisco*, 308 F.3d 968 (9th Cir. 2002).  Moreover, Plaintiff has not

16  shown that the alleged constitutional violation is the result of inadequate training such that

17  deliberate indifference is shown.  *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct.

18  1197, 103 L.Ed.2d 412 (1989) (inadequacy must be so likely to result in the violation of

19  constitutional rights that the policymaker can reasonably be said to be indifferent to the

20  need).  Indeed, mere allegations based solely on a plaintiff's own experience is insufficient

21  to establish liability of a supervisor.  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)

22  ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it

23  must be founded upon practices of sufficient duration, frequency and consistency that the

24  conduct has become a traditional method of carrying out policy."); *City of Oklahoma v.*

25  *Tuttle*, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

26       Defendants further argue Pima County is not a proper party defendant as to the

27  wrongful death claim because the county has no authority over the deputies or the sheriff's

28                                           - 19 -

department.  *See Yamamoto v. Santa Cruz County Board of Supervisors*, 124 Ariz. 538, 606 P.2d 28 (App. 1979).

Plaintiff has not responded to these arguments in her response.  Summary judgment in favor of Pima County is appropriate.

*Liability of Pima County Sheriff's Department*

42 U.S.C. § 1983 liability extends to any "person" who violates an individual's federal rights while acting under the color of state law.  Plaintiff has not provided any authority that the Pima County Sheriff's Department is a person.  Rather, the Pima County Sheriff's Department is not a proper party defendant.  *See Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (county sheriff's department is not a suable entity).

Plaintiff has not responded to this argument in her response.  The Pima County Sheriff's Department will be dismissed.

*Notice of Claim*

Defendants' request for summary judgment based on the alleged inadequacy of Plaintiff's Notice of Claim has been withdrawn.

Accordingly, IT IS ORDERED:

1.    Defendants' Motion for Summary Judgment [Doc. # 43] is GRANTED.

2.    Judgment is awarded in favor of Maldonado and Petropoulos and against Plaintiff on the civil rights claims alleged under 42 U.S.C. § 1983.

3.    The claims against Pima County and the Pima County Sheriff's Department are DISMISSED.  Judgment is awarded in favor of Pima County and the Pima County Sheriff's Department and against Plaintiff.

4.    The parties shall submit their proposed Joint Pre-Trial Statement regarding the remaining claim of wrongful death against Maldonado and Petropoulos within thirty (30)

1    days of this Order.

2           DATED this 13th day of February, 2009.

3

4

5    _____
     Cindy K. Jorgenson
6    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28